**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

---

**ELOISE KROON**,

　　　　　　Plaintiff,

　　　　v.

**NATIONAL RAILROAD PASSENGER
CORP. d/b/a AMTRAK**,

　　　　　　Defendant.

Case No. 23-cv-2948 (CRC)

---

**MEMORANDUM OPINION AND ORDER**

Plaintiff Eloise Kroon moves for a new trial on the ground that the Court improperly admitted a single exhibit during the October 2025 trial of this employment discrimination case against Amtrak. The Court will deny the motion.

## I.　Background

Ms. Kroon has worked for Amtrak for about 15 years. In 2022, she applied for a different position with the organization. She interviewed and was offered the job. The hiring manager, Thomas Teti, informed her that, if she accepted, her salary would be roughly $64,000. That was below Kroon's existing salary, so she declined the offer. She later sued for employment discrimination. She alleged that Mr. Teti lowballed her on the offer because he did not want a Black person to fill the position.

Amtrak answered, and the case proceeded to discovery. Evidence adduced during discovery created disputes over the two main factual assertions supporting Kroon's claim: *first*, that a former co-worker of Kroon's overheard comments made by Teti that reflected racial bias on his part, thereby showing that the salary offer was discriminatory; and *second,* that Amtrak's salary policies permitted Teti to offer Kroon (as well as two white candidates who were offered

the position) more than the $64,000 he offered all three—thereby revealing as pretextual Amtrak's facially legitimate explanation that the salary was the highest it could offer.  With factual disputes present on both issues, the Court denied Amtrak's motion for summary judgment and the case headed to trial.  See Kroon v. Nat'l R.R. Passenger Corp., No. 23-cv-2948 (CRC), 2025 WL 660843, at *5 (D.D.C. Feb. 28, 2025).

Following a three-day trial and about three hours of deliberation, a jury returned a verdict in favor of Amtrak.  Kroon's new trial motion centers on an evidentiary issue concerning the second of the two factual assertions noted above.  That issue played out as follows.

The parties exchanged exhibit and witness lists prior to trial.  One of Kroon's trial exhibits—Kroon 118[1]—which she had relied on to defeat summary judgment, was what appeared to be an Amtrak document listing pay bands for various job positions, including the one Kroon was offered, effective July 1, 2019.  The band for Kroon's position is shown to be $47,550 to $80,000.  Kroon sought to introduce the document in her case in chief to refute Amtrak's anticipated position that it could not have offered Kroon more than the $64,000 it did.

Following a motion in limine from Amtrak, the Court engaged the parties in a discussion of the admissibility of Kroon 118 at the pre-trial conference.  Amtrak objected to its admission on relevance grounds, among others, because Kroon was offered the position in 2022, three years after the effective date of the listed pay bands.  Pretrial Conf. Tr., Oct. 7, 2025, at 9:23–25, 10:13–15.  Were the document to be admitted, Amtrak sought to call its Director of Compensation, Amanda Bastien, to testify that the 2019 pay bands were no longer in effect in 2022.  Id. at 12:11–15, 34:13–18.  Kroon objected to any testimony by Ms. Bastien because

---

[1] The Court calls the exhibit "Kroon 118" because that was how it was labeled in the summary judgment record and referred to in pre-trial proceedings.  It was later admitted at trial as Plaintiff's Exhibit 8.

Amtrak had not identified her in its initial disclosures during discovery.  Id. at 34:22–35:5.

Amtrak retorted that Kroon only made the assertion about the 2019 guidelines after discovery

closed and that Bastien was being called only as a rebuttal witness to counter the impact of

Kroon 118.  Id. at 35:6–17.  The Court reserved judgment on the objection pending a submission

from Kroon on why Amtrak was obligated to have disclosed Bastien.  Id. at 37:23–38:2.

Kroon made the submission, and the Court took up the issue immediately prior to the

beginning of trial.  Curious about the absence of any documentation (at summary judgment or in

the parties' proposed trial exhibits) concerning pay ranges for Kroon's position in the relevant

2022 period, the Court asked Amtrak's counsel, "[I]s it your position that there was no

equivalent document to Kroon 118 that was in effect as of 2022?"  Trial Rough Tr., Oct. 14,

2025, at 6:2–4.  Counsel responded, "Not in that exact format, Your Honor."  Id. at 6:5–6.  Given

the ambiguity of that response, and nudged by Kroon's counsel, the Court ordered Amtrak to

promptly produce to opposing counsel and the Court any "document showing salary range

guidelines for Ms. Kroon's position that was in effect as of the relevant date in 2022."  Id. at

7:13–17.  The Court added that if such a document exists, "the plaintiff should have gotten [it] in

discovery."  Id. at 7:19–22.

In response to the Court's order, Amtrak produced what was later marked as Defense

Exhibit 27, a spreadsheet printout showing salary information for the position Kroon was

offered.  The spreadsheet indicates a "market reference point" salary of $59,600.  It then includes

two ranges for applicants deemed to be "developing" or "proficient" based on listed criteria.  The

"developing" salary range is $51,602 to $56,761; the "proficient" range is $56,762 to $64,368.

The spreadsheet also contains a column listing criteria for "expert" applicants, but the cells that

line up with the corresponding salary ranges are marked "inactive."

The Court ultimately overruled all of Amtrak's objections to the introduction of Kroon 118, and the document was offered and admitted during Ms. Kroon's case in chief.  Trial Tr., Oct. 14, 2025, at 50:22–23.  In its case, Amtrak called Donielle Jackson, a former internal "recruiter" who testified that she set the $64,000 salary for Kroon's position.  Id., Oct. 16, 2025, at 326:11–16.  When asked how the process worked, Ms. Jackson explained that "once a week Compensation sen[t] all of the recruiters a spreadsheet, and it [told] us the Developing range, the Proficient range for all of the roles that are open across the organization."  Id. at 307:18–21.  She continued that the compensation department provided her that very information for the position Kroon had been offered.  Id. at 307:18–24.  When Amtrak's counsel then asked her what the salary range was, Kroon's counsel objected and requested a bench conference.  Id. at 308:2–3.  In the ensuing discussion, Amtrak's counsel proffered that the salary range Jackson was referring to was reflected in Defense Exhibit 27, the belatedly produced spreadsheet, which Jackson received via email from the compensation department.  The Court overruled the objection and permitted Jackson to explain that she set the salary for the position at $64,000 based on the range for the position she received from the compensation department.[2]  Id. at 311:8–9, 316:4–14. However, the Court prohibited Amtrak from introducing Defense Exhibit 27 itself because it had not been produced during discovery in response to document requests by Kroon that called for it. Id. at 316:19–317:6.  (Amtrak's trial counsel took pains to emphasize that the company was represented by different counsel during discovery.)

---

[2] Amtrak also introduced additional exhibits indicating that Jackson set $64,000 as the salary for two white applicants for the position who were eventually offered the position based on the same market ranges she received from the compensation department.  See Pls.' Ex. 4, Ex. 5; Trial Tr., Oct. 16, 2025, at 317:14–19.

4

On cross-examination, after Jackson indicated that she was not familiar with Kroon 118, Kroon's counsel asked her "is there a document that showed in 2022 what the pay bands were?" Jackson responded, "I don't recall."  Then came the following exchange:

> **Kroon Counsel:** Is there any reason that there wouldn't have been that? You guys were still using pay bands, right?
> **Jackson:** Yes.
> **Kroon Counsel:** But you don't know what those pay bands were?
> **Jackson:** No.
> **Kroon Counsel:** Let me ask you this: In a case where someone's alleging that they were lowballed because of their race, if the pay bands showed that they'd gotten, you know, a top-of-the range offer, if it were you, wouldn't you produce those pay bands?
> **Amtrak Counsel:** Objection; argumentative

Id. at 343: 20–344:8.  The Court sustained the objection, not so much because the question was argumentative, but because it suggested that a "top of the range" salary band did not exist, when in fact it did—in the form of Defense Exhibit 27.  Id. at 344:9. Despite the Court's ruling, counsel went back to the well a few minutes later, during the following exchange concerning the "market pricing" information Jackson had testified she received from the compensation department:

> **Kroon Counsel:** As I understand your testimony, you received a communication regarding market pricing, right?
> **Jackson:** Yes.
> **Kroon Counsel:** And that was from Compensation?
> **Jackson:** Yes.
> **Kroon Counsel:** Where is it?
> **Jackson:** I don't know where it is. I know I saw it.
> **Amtrak Counsel:** Your Honor –
> **The Court:** Is there an objection?
> **Amtrak Counsel:** There's no objection. We're happy to show it, Your Honor, since he's opened the door.

Id. at 353:20–354:5.

The Court conducted another bench conference at the beginning of Amtrak's redirect examination of Ms. Jackson.  After Amtrak's counsel indicated that he would like to offer Defense Exhibit 27 because Kroon's counsel had "opened the door" on cross, Kroon's counsel

stated: "I don't care – if they're going to introduce that, I would like recross on it, but I don't otherwise object." Id. at 355:8–10.  Hearing no objection, the Court permitted Amtrak to introduce the document.  Id. at 355:12–14.  But when Amtrak's counsel offered the document for admission a few minutes later, Kroon's counsel switched gears and lodged an objection.[3]  The Court overruled the objection, explaining:  "You opened the door to the introduction of that document by saying, Why didn't Amtrak produce it? You suggested to this jury that they're hiding a document, and now, since you've done that, Mr. Wilson's entitled to show the jury the document." Id. at 357:7–11.

Ms. Jackson proceeded to testify, credibly in the Court's view, that the 2019 pay bands reflected in Kroon 118 were not being used in 2022; that she had never seen Kroon 118 before; that the "market pricing information" she received from compensation was what she used to set the $64,000 salary for the position Kroon was offered; that the hiring manager, Mr. Teti, did not determine what the salary offer was; and that the same offer was extended to all three successful applicants for the position. Id. at 360:2–362:4.

The Court then permitted Kroon's counsel to conduct a re-cross of Ms. Jackson, as he had requested when Amtrak initially sought to admit Defense Exhibit 27. Id. at 355:8–10. Counsel proceeded to inquire about the spreadsheet, including the presence of "inactive" cells corresponding to "Expert" applicants. Id. at 363:7–364:7.

---

[3] Counsel attempted to explain the about-face by suggesting that he was now objecting to the document because it was somehow different from the one he indicated he did not object to just minutes before. See Trial Tr., Oct. 16, 2025, at 356:8–9 ("This is not the document that we were talking about.").  But the record seems clear that Amtrak's counsel was offering the same Defense Exhibit 27 that had been discussed previously. Id. at 354:24–355:10 (first the Court then Kroon's Counsel confirming that it was the spreadsheet).  In any case, the Court accepts that Kroon's counsel eventually got around to making an objection.

Following Ms. Jackson's testimony, the Court prohibited Amtrak from calling the Compensation Director, Amanda Bastien, because her testimony would likely have been duplicative of Ms. Jackson's and because "a fair argument can be made that she should have disclosed" by Amtrak in discovery.  Id. at 365:22–366:7.  The Court then reiterated the basis for its admission of Defense Exhibit 27:

> [J]ust for the record, okay, the Court was prepared to sustain your objection to the introduction of [Defense Exhibit 27] . . . But on cross Mr. Thompson asked, 'As I understand your testimony, you received a communication regarding market pricing, correct?'… 'And that was from Compensation?' . . . 'Where is it?' The Court's ruling is that by asking that question, plaintiff's counsel suggested that Amtrak is withholding the document from the jury, when, in fact, the only reason that Amtrak was not presenting the document as an exhibit is because the Court would not allow it because of the disclosure issue. And by suggesting that, I thought that it opened the door to introduction of the spreadsheet[.]

Id. at 366:14–367:11.

Kroon's counsel then requested a jury instruction that the document was not produced until trial, to which Amtrak's counsel did not object.  Id. at 368:23–369:24.  Following brief rebuttal testimony from Ms. Kroon, the Court instructed the jury as follows:

> [T]he plaintiff proposed or requested that I advise you that this document was not produced until recently. Okay? And it was the recent production of the document that led to the discussion that we had about its admissibility. You are not to speculate about why the document was produced belatedly or to draw any conclusions one way or the other from the fact that it was produced late, but I will instruct you simply that it was produced only recently in the case.

Id. at 397:7–16.  After closing arguments, the jury proceeded to deliberate for approximately three hours before returning a defense verdict on Kroon's single claim.

Kroon filed her new trial motion on November 18, 2025.  The sole basis for the motion is the contention that Court erred in admitting Defense Exhibit 27.

7

## II.    Legal Standards

Kroon moves for a new trial under Federal Rule of Civil Procedure 59(a).  As relevant here, the rule provides that "the court may, on motion, grant a new trial on some or all of the issues . . . after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court[.]"  Fed. R. Civ. P. 59(a)(1)(A).

The decision to grant or deny a motion for new trial "lies within the sound discretion of the court."  Lane v. District of Columbia, 104 F. Supp. 3d 7, 9 (D.D.C. 2015) (Cooper, J.) (citation omitted); see also McNeal v. Hi–Lo Powered Scaffolding, Inc., 836 F.2d 637, 646 (D.C. Cir. 1988).  The court may grant a motion for a new trial "where the verdict is against the weight of the evidence . . . [or] substantial errors occurred in the admission or rejection of evidence or the giving or refusal of instructions."  Lane, 104 F. Supp. 3d at 9. (citation omitted).  "Generally, a new trial may only be granted when a manifest error of law or fact is presented."  Id. (citation omitted).  "The burden of showing that a new trial is warranted in accordance with the rigorous standard rests with the moving party."  Uzoukwu v. Metro. Wash. Council of Gov'ts, No. 11-cv-00391 (CRC), 2017 WL 4712077, at *1 (D.D.C. July 11, 2017) (citation omitted).

Where, as here, a motion for a new trial is based upon the court's evidentiary rulings, "[t]he standard for granting a new trial is not whether minor evidentiary errors were made but rather whether there was a clear miscarriage of justice."  Rice v. District of Columbia, 818 F. Supp. 2d 47, 60 (D.D.C. 2011).  An evidentiary error is considered harmless when it "does not 'affect the substantial rights' of the parties [] which 'means that the error must have been prejudicial: It must have affected the outcome of the district court proceeding.'"  Muldrow ex rel. Muldrow v. Re-Direct, Inc., 493 F.3d 160, 168 (D.C. Cir. 2007) (first quoting Fed R. Civ. P. 61 then quoting United States v. Olano, 507 U.S. 725, 734 (1993)).  That standard applies to errors

8

concerning evidence or testimony that a party failed to produce under Federal Rule of Civil

Procedure 26 and therefore may have been barred under Rule 37. Id. at 167-68. Whether an

error was harmless depends, among other things, on whether there was other evidence in the

record that supported the conclusion for which the challenged evidence was offered. Id. at 168.

If such evidence exists, courts "cannot assume that [the challenged evidence] was a crucial

element in the jury's decision-making process." Id. (citation omitted).

Federal Rule of Civil Procedure 37 governs sanctions for failure to make disclosures in

discovery. Relevant here is Rule 37(c)(1), which states in full:

> If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless. In addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard: may order payment of the reasonable expenses, including attorney's fees, caused by the failure; may inform the jury of the party's failure; and may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)—(vi).

Fed. R. Civ. P. 37(c)(1) (cleaned up).

### III. Analysis

#### A. There Was No Error under Rule 37(c)(1)

The Court initially precluded admission of Defense Exhibit 27 because it found that

Amtrak should have produced it in discovery in response to at least one of Ms. Kroon's

document requests. Trial Tr., Oct. 16, 2025, at 316:19–317:6. That was consistent with Rule

37(c)(1). The Court later permitted Amtrak to introduce the document, however, because

Kroon's counsel "opened the door" by erroneously suggesting to the jury, not once but twice,

that no salary band for Kroon's position existed in 2022—and, by logical extension, that the

2019 pay bands reflected in Kroon 118 were still operative when the salary for Kroon's position

was set. Kroon claims that was error requiring a new trial. The Court disagrees.

The main thrust of Kroon's argument is that Rule 37(c)(1) *requires* the exclusion of evidence not produced in discovery, except in situations not present here where the discovery violations were harmless or substantially justified.  Pl.'s Mot. for New Trial at 3-4.  Embedded in this contention are two sub-arguments: (1) that exclusion is automatic in the first instance and (2) that a party cannot "open the door" to the admission of evidence previously excluded under the rule.

On the first point, Kroon emphasizes the mandatory phrasing of the rule: "If a party fails to provide information [required in discovery], the party *is not allowed* to use that information . . . in a trial, unless the failure was substantially justified or is harmless."  Fed. R. Civ. P. 37(c)(1) (emphasis added).  But she neglects to recite the remainder of the rule, which continues:  "In addition to *or instead of this sanction, the Court, on a motion and after giving an opportunity to be heard, may* order payment of the reasonable expenses . . . caused by the failure, *may* inform the jury of the party's failure, and *may impose other appropriate sanctions*, including the orders listed in Rule 37(b)(2)(A)(i)-(vi)."[4]  Id. (emphasis added) (cleaned up).  Read as a whole, the rule would seem to require courts to impose at least some sanction on a party that fails to comply with discovery rules and leave open the option of selecting an alternative sanction short of outright exclusion of the evidence.

Despite this seemingly straightforward reading of the rule's text, the circuits have taken somewhat different approaches in describing the extent to which preclusion of evidence is a

---

[4] These additional sanctions are: "(i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims; (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence; (iii) striking pleadings in whole or in part; (iv) staying further proceedings until the order is obeyed; (v) dismissing the action or proceeding in whole or in part; or (vi) rendering a default judgment against the disobedient party[.]"  Fed. R. Civ. P. 37(b)(2)(A).

10

required remedy for failures to disclose that are not substantially justified or harmless.  See 8B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2289.1 (3d ed. 2026 Update) (outlining the different approaches taken).  On one end of the spectrum, the Second Circuit has explicitly adopted the above textual reading, stating that "[the] premise of the argument, that the preclusion sanction under Rule 37 is nearly automatic, is incorrect."  Lorme v. Delta Air Lines, Inc., 251 F. App'x 691, 692 (2d Cir. 2007).  "Thus, even absent a finding of either substantial justification or harmlessness, the court does have discretion to impose other, less drastic, sanctions."  Id. (quoting Design Strategy, Inc. v. Davis, 469 F.3d 284, 298 (2d Cir. 2006)); see also Roberts ex rel. Johnson v. Galen of Virginia, Inc., 325 F.3d 776, 783–84 (6th Cir. 2003) ("Rule 37(c)(1), however, provides several remedies to a district judge who is faced with violations of the mandatory-disclosure provisions of Rule 26 . . . . [It] does not compel the district judge to exclude testimony in its entirety."); Musser v. Gentiva Health Servs., 356 F.3d 751, 760 (7th Cir. 2004) ("We urge district courts to carefully consider Rule 37(c), including the alternate sanctions available, when imposing exclusionary sanctions that are outcome determinative.").

By contrast, the First Circuit has read the rule to require mandatory exclusion, at least in the "ordinary case."  Klonoski v. Mahlab, 156 F.3d 255, 269 (1st Cir. 1998) ("[T]he new rule clearly contemplates stricter adherence to discovery requirements, and harsher sanctions for breaches of this rule, and the required sanction in the ordinary case is mandatory preclusion."); see also Yeti by Molly, Ltd. v. Deckers Outdoor Corp., 259 F.3d 1101, 1106–07 (9th Cir. 2001) (noting that the rule is mandatory but that the "express exceptions" for harmlessness and substantial justification "ameliorate the harshness" of the rule).

11

Other circuits have tacked a middle course.  The Fourth Circuit has acknowledged that judges are free to apply lesser sanctions, but suggested those sanctions should be reserved for situations in which "a party fails to disclose evidence helpful to an opposing party."  S. States Rack And Fixture, Inc. v. Sherwin-Williams Co., 318 F.3d 592, 595 n.2 (4th Cir. 2003) (cleaned up).  This reading draws on commentary from the Advisory Notes to the 1993 revision of the rule indicating that exclusion in that situation could advantage the offending party.  See Fed. R. Civ. P. 37(c)(1) advisory committee's note to 1993 amendment.  The Eighth Circuit, meanwhile, has suggested that lesser sanctions may be appropriate in cases where "exclusion of evidence is tantamount to dismissal."  Vanderberg v. Petco Animal Supplies Stores, Inc., 906 F.3d 698, 704–05 (8th Cir. 2018).

The D.C. Circuit does not appear to have squarely addressed the question.  In one unpublished ruling, however, the Circuit suggested that district courts have a degree of flexibility in crafting appropriate sanctions, describing the trial court's decision to exclude testimony that was not disclosed in a party's initial disclosures under Rule 26(a) as "'fall[ing] into the heartland of case management decisions—the area where a trial judge has the remorseless responsibility, evenhandedly and efficiently, to govern, monitor, and police the progress of an endless line of cases through the court.'"  Grant v. Ent. Cruises & Spirit Cruises, LLC, 767 F. App'x 15, 16 (D.C. Cir. 2019) (quoting Gagnon v. Teledyne Princeton, Inc., 437 F.3d 188, 191 (1st Cir. 2006)).

As for fellow courts in this district, they have tended to view exclusion as mandatory.  Judge Friedman set the tone in Elion v. Jackson, No. 05-cv-992 (PLF), 2006 WL 2583694 (D.D.C. Sept. 8, 2006).  While acknowledging that all cases are "not entirely in accord," Elion described the then-existing "overwhelming weight of authority" favoring the view that

12

"preclusion is required and mandatory absent some unusual or extenuating circumstance—that is, a 'substantial justification.'" Id. at *1 (emphasis omitted) (quoting Klonoski, 156 F.3d at 269, 271).  Former Judge Collyer picked up that thread a year after that in Norden v. Samper, 544 F. Supp. 2d 43 (D.D.C. 2008).[5]  Quoting Elion—but neglecting to cite the Second Circuit's intervening ruling in Lorme, which as discussed above, rejected the mandatory reading of Rule 37(c)(1)—Norden concluded that "Rule 37(c)(1) is a self-executing sanction" requiring preclusion absent substantial justification or lack of harm.  Id. at 49–50 (quoting Elion, 2006 WL 2583694, at *1); see also Jones v. NVR Incorporation, No. 20-cv-453 (CKK), 2022 WL 951338, at *8–12 (D.D.C. Mar. 29, 2022) (applying the mandatory bar to expert testimony and evidence related to it on motion in limine), aff'd, No. 22-7064, 2023 WL 4678759 (D.C. Cir. July 21, 2023) (affirming without mention of the issues related to Rule 37(c)(1)).

The upshot is that there is no clear consensus in the caselaw—and no controlling authority from the D.C. Circuit—on the extent to which exclusion under Rule 37(c)(1) is mandatory absent substantial justification or lack of harm.  Unbound, the Court agrees with the Second Circuit and several other courts that while Rule 37(c)(1) establishes exclusion as the presumptive remedy for a party's failure to disclose evidence in discovery, its plain text permits trial courts to impose appropriate sanctions short of outright exclusion as circumstances warrant.

Here, the Court initially imposed the presumptive sanction of exclusion—which leads us to the second component of Kroon's argument that the Court erred in admitting Defense Exhibit

---

[5] Norden is the only case that Kroon cites in support of her position here.  And while Amtrak emphasizes Rule 37(c)(1)'s provision for lesser sanctions, it cites no caselaw at all showing how courts have interpreted the rule.  The lack of authority offered by both sides has required the Court essentially to start from scratch.

27: whether a party can open the door to admission of evidence previously excluded under Rule 37(c)(1).

The answer, in the Court's view, is yes. To start, Kroon's counsel clearly sought to highlight the absence of any document, apart from Kroon 118, reflecting the pay band for the position Kroon was offered in 2022. Counsel acknowledged as much. See Trial Tr., Oct. 16, 2025, at 368:4–10. And in most circumstances, it is surely fair game to point out an opponent's failure to introduce evidence on a key point and thereby invite the jury to infer that no such evidence exists. But it is another kettle of fish for counsel to suggest that evidence does not exist despite knowing that it does and that his opponent cannot introduce it only because the judge barred him from doing so. In that situation, especially when he has been put on notice, counsel risks opening the door to the opponent's admission of the evidence. As a number of courts have held, nothing in Rule 37(c)(1)—however interpreted—prohibits this result. Once again, neither party offered caselaw dealing with this precise issue. Based on the Court's independent research, however, several district courts have admitted evidence that was previously excluded under Rule 37(c)(1) on the ground that a party opened the door to its admission. See e.g., In re Davol, Inc./C.R. Bard, Inc., Polypropylene Hernia Mesh Prods. Liab. Litig., No. 2:18-cv-01509, 2021 WL 3210208, at *1 (S.D. Ohio July 29, 2021) (expert testimony "opened the door" to opinion otherwise prohibited under Rule 37(c)(1)); In re Sulfuric Acid Antitrust Litig., 235 F.R.D. 646, 660 (N.D. Ill. 2006) ("If you decide to take an expert deposition, you must be careful what you ask. You may open the door to testimony that would otherwise be precluded under Rule 37(c)(1)." (citation omitted)). And at least one circuit which has otherwise held that Rule 37(c)(1) creates a mandatory bar has affirmed that a party can open the door to evidence that was previously excluded under the rule. See Dillon v. W. Pub. Corp., 409 F. App'x 152, 155 (9th

14

Cir. 2011) (testimony "opened the door" to evidence that was initially not permitted under Rule 37(c)(1)). So, even if exclusion under 37(c)(1) is mandatory in the first instance, ample authority supports the Court's conclusion that it did not err in admitting Defense Exhibit 27 following counsel's cross-examination of Ms. Jackson.

B. <u>Any Error Was Harmless</u>

Even if the admission of Defense Exhibit 27 was erroneous, Kroon is not entitled to a new trial. Again, "[t]he standard for granting a new trial is not whether minor evidentiary errors were made but rather whether there was a clear miscarriage of justice." <u>Rice</u>, 818 F. Supp. 2d at 60. No miscarriage of justice occurred here because exclusion of the document would not have affected the result of the trial.

For starters, the spreadsheet excerpt was not the only evidence that the salary Amtrak offered Ms. Kroon was at the high end of the salary band that applied to the position in 2022. It was simply corroborative of Ms. Jackson's unimpeached testimony that she used the "market pricing" analysis she received from the Compensation department to set the salary at $64,000. Moreover, Jackson credibly testified that Mr. Teti did not determine Ms. Kroon's compensation offer, Trial Tr., Oct. 16, 2025, at 360:19–362:4, and that the same offer was made to two other successful applicants for the position, both of whom are white, <u>see id.</u>, Oct. 15, 2025, at 144:15–21 (Ms. Kroon acknowledging race of relevant individuals); <u>id.</u>, Oct. 16, 2025, at 326:11–24 (Ms. Jackson's recounting the salary offers). In light of this independent evidence, Defense Exhibit 27 could not possibly have been determinative of the jury's verdict in Amtrak's favor.

The introduction of Defense Exhibit 27 also did not affect the outcome of the trial for another reason. Recall that Ms. Kroon's theory of the case rested on two factual propositions. The first, discussed above, was that Amtrak, through Mr. Teti, could have offered her more than

15

$64,000. The second was that Teti lowballed her because he did not want to work with African Americans. The only evidence that Kroon offered at trial for Teti's supposed bias against African Americans was the testimony of Alixandria Turner, a former Amtrak contractor. Specifically, Ms. Turner testified that in June 2022 she overheard a conversation between Teti and another employee, Amber Vitullo, in which after hearing that Teti planned to hire Ms. Kroon, Ms. Vitullo purportedly stated that "she didn't want to work with any n*****s." Teti's response, according to Turner, was: "Don't worry about it. I'm going to lowball her." Trial Tr., Oct. 15, 2025, at 163:22–164:4. Ms. Kroon testified that Turner apprised her of the conversation about three months later, in August 2022. Id. at 156:9–11.

On cross-examination, however, Turner acknowledged that she failed to mention Vitullo's purported use of the n-word in a handwritten statement discussing the incident that she prepared a few weeks later in connection with her own discrimination suit against Amtrak. Id. at 167:13–168:11. And in its case, Amtrak called Joseph Papapietro, who conducted an internal investigation of Kroon's complaints about her salary offer. Mr. Papapietro testified that Ms. Kroon failed to mention the purported Teti-Vitullo conversation in his interview of her soon after she purportedly learned of the conversation. Id. at 203:6–12. Nor did Kroon bring up the use of the n-word in six emails she sent to Papapietro about the investigation between August 2022 and January 2023. Id. at 156:11–161:3 (Kroon cross-examination); 205:11–206:16 (Papapietro testimony). Had one of the most noxious words in the English language, depending on the context, been used in the office as Turner testified, it defies credulity that neither she nor Kroon would have thought to bring the incident to Amtrak's attention during its investigation of their

16

respective discrimination complaints.[6]  Accordingly, the jury could easily have rejected Turner's testimony on this point as not credible.  And because that testimony was the only support offered for Kroon's contention that the $64,000 salary offer was racially motivated, a reasonable jury could have returned a verdict in Amtrak's favor based on Turner's lack of credibility alone.

## IV.  Conclusion

For the foregoing reasons, it is hereby

**ORDERED** that [63] Plaintiff's Motion for New Trial is hereby DENIED.

**SO ORDERED**.

_____
CHRISTOPHER R. COOPER
United States District Judge

Date:  May 29, 2026

---

[6] Indeed, the first evidence of the purported utterance in the record of this case came in a June 20, 2024, declaration that Turner submitted on Kroon's behalf in opposition to Amtrak's summary judgment motion.  See Pl.'s Opp'n to Mot. for Sum. J., Decl. of Alixandria Turner. The timing is convenient to say the least.